IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CASE NO. 15-16784
D.C. No. 3:13-cv-03440-EMC
U.S. District Court for Northern California, San Francisco

ALEXANDER BIRNER,

        Objector/Appellant,

v.

DAVID HANSEL, EDWARD TOOLEY, and CHRISTOPHER VALDEZ, individually and on on behalf of all others similarly situated,

        Plaintiffs/Appellees,

TRACFONE WIRELESS, INC., d/b/a STRAIGHT TALK WIRELESS, and WALMART STORES, INC.,

        Defendants/Appellees.

**OBJECTOR'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: SUMMARY AFFIRMANCE**

PAUL M. MONZIONE, (SBN 101124)
Law Offices of Paul M. Monzione, PC
1388 Sutter Street, Suite 910
San Francisco, CA 94102
(603) 569-9599
info@monzionelawoffices.com

DONALD K. BIRNER (Admitted *pro hac vice*)
Attorney at Law (0213152)
2613 Mayflower Drive
Pekin, IL 61554

*Counsel for Objector/Appellant, Alexander Birner*

**I.    INTRODUCTION**

    In response to this Court's Order to Show Cause Why a Summary Affirmance of the District Court's Orders Are Not Appropriate, Objector submits that this is precisely the kind of

1

1  case that in the interest of justice should not and cannot be summarily affirmed on appeal or
2  adjudicated at the trial level.
3      Specifically, it is a case in which a trial judge, presented in some respects with very
4  difficult factual issues, made a finding that the "Plaintiff" had no case. This finding, albeit with
5  regard to an Objector in the context of a hearing on objection to a proposed class action
6  settlement, was made without the benefit of a trial, a summary judgment motion, a full and fair
7  opportunity for obtaining discovery on the subject issues, and in circumstances where the Objector
8  or Plaintiff was given an extremely short time period to prepare and present his case.
9      In essence, given the facts of this case, the Objector was put to the burden of proving
10 ultimate factual issues that would otherwise not have been adjudicated until trial or until a party
11 had been afforded the procedural and due process requirements governing summary judgment
12 motions, and all within approximately 20 days from Objector filing his Objection.
13     For example, in this case where it is the Defendant who exclusively determines who meets
14 the criteria for class membership, the trial court placed the burden on the Objector to prove that he
15 met the class action membership criteria. In specific, the court relied heavily on the fact that the
16 Objector was unable to unequivocally state under oath that his cell phone service had been
17 throttled. The Court imposed this burden notwithstanding the fact that most customers of the
18 Defendant would have no familiarity with even the term "throttled", let alone be able to testify
19 that throttling had happened to their service.
20     It is well known that one's cell phone service can be interrupted or lessened in quality by
21 any number of extraneous factors, including the user's location; the time of day and amount of
22 traffic or number of users on the same cell phone tower; foliage; and most likely a number of
23 other factors. For a lay person without the assistance of proper discovery or more importantly,
24 expert witness analysis to testify under oath with certainty that his service was throttled, is wholly
25 unreasonable, unfair, and most importantly, unjust in these totality of circumstances.
26     Moreover, when one considers that the United States federal government made the careful
27 and thoughtful determination that there was sufficient evidence to pursue a case against Defendant
28

for unlawful business practices regarding the so called "unlimited plan" and that the government's efforts resulted in an agreement for Defendant to pay a forty (40) million dollar fine, it is reasonable to conclude that a just and fair settlement of the civil class action should be one where the Defendant's risk of going forward to a civil trial is substantial.

The Court should not permit a multi-billion dollar American business to increase its mass profits by using the kind of unfair and deceptive practice where it represents its service to be "unlimited" thereby conveying that message to the average consumer in its plain language, and then provide a service that is exactly the opposite of what the plain term "unlimited" means. This is particularly true when the company then charges an additional $15.00 per month fee for the so-called "unlimited" plan. Such evidence goes to the heart of the issue of whether the proposed settlement should be approved. These are issues that required in-depth analysis after careful briefing and which do not lend themselves to summary adjudication. There are not grounds here upon which the Trial court is entitled to be summarily affirmed. To the contrary, the opposite is true, that the parties are entitled to fully brief and argue the merits of these issues.

It is likely that Defendant is in possession of records of the third party carriers who throttle on behalf of "Tracfone", that would clearly demonstrate that a customer's cell phone service was in fact throttled.
However, Tracfone has produced none of the agreements it has with its carriers indicating the triggering points for throttling or slowing of service.

The fact is that whether a customer was throttled or is otherwise a member of the class as established by the criteria, is something that cannot be determined solely based on the customer's own knowledge. For this reason, as well as several other reasons that are the subject of this appeal, the Trial court committed reversible error when it found that Objector did not have standing and when it made such a determination without permitting a full and fair opportunity to adjudicate that issue, including the opportunity to obtain and properly analyze discovery from Defendant, and when it approved the proposed class-action settlement.

The trial court's errors in each of these areas cannot be adjudicated by the Court by way of summary affirmance. These substantial issues need to be carefully briefed and comprehensively looked at as they entail issues of whether substantive and procedural due process was afforded Objector and whether a settlement, which on its face is but a mere fraction of the actual damages suffered by the class members, should have been approved.

## II. ARGUMENT AND PROCEDURAL BACKGROUND

### A. Whether Objector was foreclosed an opportunity to conduct adequate discovery to determine his standing and therefore deprived of his constitutional procedural and substantive due process rights is not a legal issue that is so insubstantial as to be subject to summary disposition under Ninth Circuit Rule 3-6 (b).

On May 19, 2005, Objector filed his comprehensive objection to the proposed settlement. Subsequently, the parties entered into a stipulation regarding discovery, including that Defendant and Plaintiffs would take Objector's deposition in that Defendant would produce un-redacted full discovery.

The discovery was produced and received by Objector on June 10, 2015, approximately ten (10) working days prior to the scheduled final approval hearing before Judge Chen, in the trial court. The discovery received was heavily redacted, and in fact Defendant's counsel admitted that on the record that 'only' 650 pages were redacted. In addition, Excel documents were password-protected, and it was obvious that certain documents, such as the exhibits to most if not all of the depositions, were missing.

Consequently, Objector filed his Motion to Continue or Stay the Proceedings so he might receive unadulterated discovery. ( Doc. 141.) This Motion was denied by the trial judge, and the opposing parties claimed that Objector lacked standing and that it was his burden to prove otherwise. The Court was not impressed by the fact that discovery had been altered and redacted or missing and despite this fact, the Motion was denied.

Plaintiff/Objector did discover that TracFone produced documents that indicated without qualification that persons who used AT&T as their carrier, as did the Objector, were throttled upon activation. Nonetheless, literally hours before the hearing, TracFone produced a declaration

of one of its employees that the trial court simply took as true while giving Objector no opportunity whatsoever to conduct discovery regarding that declaration of the defense that this Objector was not throttled and hence lacked standing to object to the proposed class settlement.

At the hearing on June 22, 2015, Objector's counsel specifically asked the Court to note in the order that Objector was refused discovery of thirty (30) additional days to review discovery, and the Court said the record would reflect that Objector asked for additional time. (Document 157 transcript of proceedings, line 21.)

After the hearing on July 27, 2015, Objector filed his Motion asking the Court to reconsider his order denying the Objector additional time to conduct discovery in light of the fact that many of the documents were altered and documents used to produce the record were produced literally hours before the hearing. These documents included summary statements regarding the amounts charged by class counsel that could never be questioned by Objector. The procedure violated Objector's due process rights by denying discovery especially since the initial discovery produced was altered and resulted in the concealment of information that was undoubtedly relevant to the issue of Objector's standing.

The party should not have been able to alter discovery and then take the position at the hearing that Objector lacked standing because he was not throttled and that it was his burden to prove otherwise. This was so notwithstanding the fact that TracFone only had the records regarding throttling and could solely and exclusively determine who was a class member and who could object to the proposed settlement.

This unfettered discretion should never have been given to the other adverse parties carte blanche by the trial court. An adverse party should never be forced to simply accept representations by opposing parties without a full and fair opportunity to discover relevant information and to test the veracity and accuracy of such representations.

Objector should have been given the time to conduct appropriate discovery regarding the issue of his standing. Since the proposed settlement was approved, Objector's counsel has sent two separate letters to TracFone's attorneys, requesting they reiterate their position in writing

regarding the proposed settlement agreement and whether this Objector is bound by the judgment and settlement agreement once approved. TracFone has refused to date to respond to these letters.

This refusal strongly suggests that they believe Objector will be bound by the settlement agreement which if so, would mean Objector has Article III standing to object to the proposed settlement. It also establishes that Objector was injured by Defendant's conduct who promoted and represented a limited plan as "unlimited." Objector might well be further damaged as it appears Defendant is taking the position that Objector is bound by the judgment.

In addition, a favorable ruling would provide a remedy or relief to this Objector.

**B.** **That the Trial court committed reversible error when it approved the proposed settlement when in fact the proposed settlement agreement is unfair, unreasonable, and inadequate, is not an issue that is so insubstantial as not to require further argument or be summarily affirmed.**

Discovery has revealed approximately sixty (60) million unlimited plans were sold by TracFone during the class period. This is a conservative number because it covers the period of 2009 through June 2014, which is less time than in the class period. It also appears that the retail price of the unlimited plan was between $45.00 and $60.00 per month, while the limited plan was approximately $35 per month. Notwithstanding termination, suspending or throttling their customer's service, all of these subscribers suffered economic damage in the amount of at least $15.00 per month, and even if one allots only half of that for data usage, the damages, which will go uncompensated, are staggering being in the vicinity of 10 billion dollars.

Discovery reflects that the average subscriber during the class period was on the unlimited plan for between 14 to 20 months and with the largest seller, Straightalk, an average of 20 months.

According to discovery produced, in addition, approximately twenty-nine (29) million handsets were locked so that they could not be used with a competitor. This meant that people who had purchased phones from TracFone and believed they owned them could only use them with TracFone and no other providers. These customers will receive absolutely no relief under the terms of the proposed settlement agreement. Google research shows smart phones can cost up

to $800 per phone. These damages alone are enormous and will go uncompensated if the plan is not rejected.

The proposed settlement is to be funded by $40 million which was paid to the FTC by TracFone as a way of settling a deceptive practice lawsuit brought by the federal government. The agreement with TracFone and the FTC appears to permit TracFone to treat the settlement payment as a tax deduction. In addition, this payment that also frees Defendant from liability to the government for its deceptive practices is being used to fund the proposed class action settlement. This proposed settlement amount on the damages suffered by Defendant's customers is paltry.

By simply using these numbers, one can readily calculate the amount of economic injury suffered by TracFone customers as being over $10 billion.

It should also be mentioned that the parties' counsel represented to Judge Chen that these customers were the largely month-to-month auto refill subscribers, who could cancel the contract at any time, yet made no mention of the fact that if the customers did so, many would basically have to throw their unusable phones away.

The fact that discovery was blockaded and Objector was refused a 30 day request for a continuance to conduct discovery, and that Tracfone exclusively controlled who was a member of the class and hence who could object to the proposed settlement, and that Objector was then found by the trial court to lack standing, raises substantial and complex legal issues that cannot, and in the interest of justice, should not be determined to be so insubstantial as to be subject to summary affirmance without requiring further argument.

It is also noteworthy that the discovery produced did not include any agreements regarding throttling by TracFone with any of its four carriers, who actually throttled customers of Tracfone. There was no discovery taken of the four carriers who actually implemented the throttling practices in over 4 million instances.

Objector's counsel, as well as Objector, consider it their duty to protect those similarly situated, who were economically damaged without compensation, by pursuing all avenues to

obtain restitution which would include filing an independent suit on behalf of those similarly situated to economic injury. It is for this reason that Objector brought his Objection to the proposed class action settlement. How that Objection was treated by the trial court is not such an insubstantial question that it can be deprived for the argument for that would warrant that the trial court's rulings be subject to summary affirmance.

### III. CONCLUSION

Objector was denied substantive and procedural due process in the Trial court and was foreclosed from pursuing relevant and meaningful discovery. It would shock the conscience if he were also denied the right to appeal not only his lack of an opportunity for relevant discovery, but to contest the unreasonableness, unfairness, and the inadequacy of this proposed settlement agreement which compensates approximately one million subscribers while over 60 million were economically injured due to misrepresentations and deceptive practices by TracFone.

For all of the foregoing reasons, Objector respectfully requests this Court to find that this appeal is not subject to summary disposition under Ninth Circuit Ruled 3-6 (b) and permit the appeal to be heard on the merits after all parties are afforded a full and fair opportunity to fully brief the issues and to present all arguments on appeal.

Respectfully submitted,

DONALD K. BIRNER
Attorney at Law (0213152)
2613 Mayflower Drive
Pekin, IL 61554

By: /s/ Donald K. Birner
DONALD K. BIRNER
Admitted *pro hac vice*

*Counsel for Objector/Appellant, Alexander Birner*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 21st, 2015. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

             DONALD K. BIRNER

           By: */s/ Donald K. Birner*
              Admitted *pro hac vice*